UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORRIN RANKIN,<br><br>       Plaintiff,<br><br>   v.<br><br>GLOBAL TEL*LINK CORPORATION,<br><br>       Defendant. | Case No.  13-cv-01117-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 20 |

## I.    INTRODUCTION

Plaintiff Corrin Rankin, who operates a bail bond business, Out Now Bail Bonds ("Out Now" or "Plaintiff") in San Mateo County ("the County"), asserts claims against Global Tel*Link Corporation ("GTL"), which provides telephone services in San Mateo County correctional facilities pursuant to a contract with the County.  Presently before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint for Failure to State a Claim Upon Which Relief Can be Granted or Plead with Particularity ("the Motion").  A hearing on the Motion was held on Friday, June 28, 2013 at 9:30 a.m.  For the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]

## II.    BACKGROUND

### A.    Allegations in The First Amended Complaint[2]

Plaintiff Out Now brings this action on the basis of diversity jurisdiction, pursuant to 28 U.S.C. §§ 1441(a) & (b).  First Amended Complaint ("FAC") ¶ 7.  Out Now primarily provides

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).
[2] For the purposes of the instant motion, the Court assumes the factual allegations in Plaintiff's First Amended Complaint to be true.

United States District Court<br>Northern District of California

bail services to customers in San Mateo, California.  *Id*. ¶ 9.  GTL is a telecommunications company whose sole line of business is facilitating phone calls between incarcerated people and people in the outside world.  *Id*. ¶ 13.  GTL is a Delaware corporation with its principal place of business in Fulton County, Georgia.  *Id*. ¶ 7.

Out Now alleges that the bail bond industry is "both carefully regulated and highly competitive;"  there were thirteen bail bond agencies operating in San Mateo County as of the date of the FAC.  *Id*. ¶ 10.  According to Plaintiff, the state sets the rates the agencies may charge, so they cannot rely on low prices to compete.  *Id*. ¶ 11.  Instead, "bail bond agencies depend on their ability to reliably communicate with potential clients, 24 hours a day, 7 days a week, in order to compete."  *Id*. ¶ 12.   This means bail bond agencies rely on telephone communications from people who are incarcerated to obtain business.  *Id*.  "If those telephone communications are disrupted, agencies cannot post bonds for incarcerated clients who are attempting to contact them directly, thereby losing that business and corresponding income."  *Id*.  Plaintiff further alleges that "if incarcerated people cannot contact a bail bonds agency, other people at the same facility learn that the number appears to be inoperable and therefore do not even attempt to contact that bail bonds agency."  *Id.*

According to Out Now, between November 27, 2007 and March 31, 2013, GTL had an exclusive contract ("the Contract") with the County to provide telecommunications services for the County's correctional facilities.  *Id*. ¶ 15, Exs. 1 (Agreement between the County of San Mateo and Global Tel*Link for initial three-year term) & 2 (Amendment One, extending term of agreement through March 31, 2013).  The services to be provided by GTL under the Contract are set forth in Exhibit A to the Contract, which lists as the objective of the project "the installation of a state-of-the-art, fully operational, flexible, secure and reliable inmate telephone system and to provide [the] County the means to ensure the lawful and legitimate use of the system by the inmate population."  *Id*., Ex. A to Ex. 1, § 3.   Exhibit A also includes a section entitled "Project Assurances," which states that GTL shall "determine the optimum number of telephones at each County facility, and shall make adjustments to the existing number of connections as may be required, and shall maintain same in good working order throughout the term of the Agreement."

United States District Court
Northern District of California

United States District Court
Northern District of California

*Id.* § 4.  Exhibit A requires that the County "provide a list of office telephone numbers of bail bond firms transacting business in San Mateo County [and] [p]rovide regular updates to the list of office telephone numbers of bail bond firms transacting business in San Mateo County as new information becomes available to [the] County."  *Id.* § 7.

Out Now alleges, on information and belief, that the County provided the list of bail bond firms to GTL.  *Id.* ¶ 20.  In addition, Plaintiff alleges that a list of bail bond agencies and their telephone numbers is posted on the "jail board" in Maguire Correctional Facility, in San Mateo County, near the telephone maintained by GTL; according to Plaintiff, Out Now has been on the jail board list continuously since July or August 2008.  *Id.*  Therefore, Plaintiff alleges, GTL "had knowledge of Out Now's phone number from multiple sources."  *Id.*

According to Out Now, "GTL's collect call rates in San Mateo County included a connection 'surcharge' for each call plus varying rates for the initial and subsequent minutes of a call based on the time of day and the distance between the correctional facility and the person or business being called."  *Id.* ¶ 21.  For Out Now, the connection "surcharge" was $3.15; the rate for additional minutes was between $0.677/minute to $0.153/minute for the first minute, and $0.569/minute to $0.0759/minute for each additional minute, based on time of day.  *Id.*  As a result of this rate structure, Plaintiff alleges, "GTL profited more if inmates made short calls to multiple bail bonds agencies rather than one long call to a single agency" or if phone service to bail bond agencies was disrupted.  *Id.* ¶ 22.  According to Plaintiff, GTL keeps records documenting the calls made and who terminated the call, that is, whether the call was terminated by the caller, the person being called, the San Mateo County Sheriff's Office or GTL.  *Id.* ¶ 23.  It also records most calls and maintains the recordings.  *Id.*

Plaintiff alleges that between February of 2008, when Out Now was formed, to March 31, 2013, GTL provided Out Now with telephone service that allowed it to receive calls from inmates incarcerated in San Mateo County.  *Id.* ¶ 24.  Although there is no written contract between GTL and Out Now, Plaintiff alleges that there is an implied contract between them based on the fact that Out Now pays its bills and GTL permits Out Now to receive collect calls from inmates.  *Id.* ¶ 26.  Though Out Now has paid its bills on time, however, GTL allegedly has "frequently failed to

3

1    permit Out Now to receive inmate calls." *Id.*

2        Plaintiff alleges that "GTL . . . directed a great deal of advertising to Out Now and other

3    consumers in California in which GTL falsely represents that it will provide reliable telephone

4    service." *Id.*, ¶ 28.  Plaintiff provides as an example the following statement on GTL's website:

5            Global Tel*Link (GTL) is a leading provider of the most advanced
             and reliable inmate telephone system in today's corrections industry.

6            Featuring state of the art investigative and administrative
             capabilities, GTL's inmate telephone system creates a standard of

7            efficiency and cost savings that is unmatched. Implemented in more
             than 15 state Departments of Corrections and over 160 larger county

8            and regional jails across the United States, GTL's inmate telephone
             system has proven be the industry leader.

9

10   *Id.* & Ex. 4 (screen capture of http://www.gtl.net/correctional_facility_index.shtml).

11       Plaintiff also cites as an example of false advertising claims made by GTL in connection

12   with its "LazerPhone," which is expressly referenced in the Contract between GTL and the

13   County.  *Id.* 29;  *see also* FAC, Ex. 1 (Contract), Ex. A thereto at 11 ("Contractor will install and

14   maintain a minimum of 170 inmate phones on its LazerNet Platform . . .").   In particular, Plaintiff

15   alleges that on a page of its website for the LazerPhone, GTL states that "GTL is a leading

16   provider of reliable inmate telephone systems featuring powerful investigative and administrative

17   capabilities." *Id.* ¶ 29;  *see also* FAC, Ex. 5 (screen capture of  http://www.gtl.net/ products/

18   lazerphone.shtml).    Plaintiff also cites as misleading the following statement on the same GTL

19   web page:

20            GTL understands that completed calls mean happier inmates and
             families. More importantly it means increased revenue to your

21           facility. Our call completion percentages are some of the highest in
             the industry due to the various calling options provided.

22   *Id.*

23       In addition, Plaintiff cites as misleading the following statement in GTL's 2007

24   LazerPhone brochure, which Plaintiff alleges was accessed through the GTL website on April 25,

25   2013:

26            LazerPhone, the most advanced inmate telecommunications system
             on the market, is the premier product of Global Tel*Link™. GTL is

27           a leading provider of reliable inmate telephone systems featuring
             powerful investigative and administrative capabilities. LazerPhone

28           is currently installed in more than 25 State Departments of

United States District Court
Northern District of California

1    Corrections and over 325 larger county and regional jails across the
     United States.

2    *Id.*, ¶¶ 30-31; *see also* FAC Ex. 6 (LazerPhone Brochure).

3    Plaintiff alleges that in October 2011, GTL informed its customers it would be switching

4    over from using a third party billing service to direct billing.  *Id.* ¶ 33.  Plaintiff alleges that

5    following the switch, "Out Now and other small bail bonds agencies found their monthly call

6    limits severely decreased to $300 or less per month, despite the fact that they often received $1000

7    or more per month or more in collect calls."  *Id.* ¶ 35.   Plaintiff further alleges that on November

8    21, 2011, its call limit was decreased to $50 per month.  *Id.*  ¶ 36.  According to Plaintiff, the

9    reduction was in retaliation for Out Now's October 14, 2011 telephone call to GTL Customer

10   Service, in which Out Now complained about service problems and expressed the opinion that it

11   was improper for GTL to reduce the call limits without first informing customers.   *Id.*

12   Out Now alleges that on November 21, 2011, it "received multiple collect call requests that

13   it was unable to accept due to GTL's new policies and Out Now's impractically low monthly

14   limit."  *Id.* ¶ 37.   When Out Now called GTL to inquire about the problem that day, it was given a

15   number of different explanations of the problem.  *Id.*  Out Now alleges that it complained to the

16   San Mateo County Sheriff's Office, who passed the complaint on to GTL and a GTL

17   representative responded.  *Id.*  Out Now alleges that in addition to the November 21, 2011

18   problem, its "phones were down for most of the first three weeks of November."  *Id.* ¶ 38.  In

19   particular, it alleges that it did not receive any inmate calls between November 2 and November

20   22, 2011.  *Id.*  According to Plaintiff, it was required to make a $200 credit card payment in

21   November 2011 "simply [to] restore service."  *Id.* ¶ 39.

22   Plaintiff alleges that when it received its first direct bill from GTL, on November 29, 2011,

23   it contained "Terms and Conditions"  and that subsequently these were sent with every bill.  *Id.*, ¶

24   ¶¶ 27, 40 & Ex. 3.  The Terms and Conditions, Plaintiff asserts, indicated that the only reasons an

25   account would be suspended was for non-payment of bills, and provided that service would be

26   automatically renewed unless it was terminated by either party on thirty (30) days prior notice.  *Id.*

27   ¶ 27 & Ex. 3.  It also did not mention any monthly limit on calls.  *Id.*

28   Out Now alleges that its telephone service between 2008 and the end of the Contract term

5

was "intermittent" and that Out Now's service was disconnected for "at least two and a half months in 2011 and three months in 2012." *Id*. ¶¶ 54-55.   It also alleges that it frequently complained about problems with GTL's service between 2008 and the end of the contract term. *Id*. ¶ 58.  Out Now alleges that its complaints with GTL's service during this period included the following:

> a. Providing call quality that was so poor that inmates could not be heard;
>
> b. Cutting off phone service to Out Now's line, or negligently failing to maintain the line;
>
> c. Cutting off phone service for all outgoing calls, or negligently maintaining GTL's equipment;
>
> d. Setting unreasonably low limits for the amount Out Now can spend on calls per month;
>
> e. Refusing to raise limits for the amount Out Now can spend on calls per month;
>
> f. Repeatedly promising to raise limits for the amount Out Now can spend on calls per month, and then failing to do so;
>
> g. Refusing to refund charges for dropped calls;
>
> h. Placing Out Now's account in collections despite the fact it is current on its bills, and usually overpays, in retaliation for complaints;
>
> i. Disclosing confidential information to third parties without Out Now's permission, including account balance limits;
>
> j. Cutting off phone service to Out Now in retaliation for Out Now's request that customer service and technical matters be addressed; and
>
> k. Cutting off phone service because Out Now had allegedly spent more than its monthly limit, despite the fact that this limit is not mentioned in the Terms and Conditions or in Out Now's bills.

*Id*.

Out Now alleges that on three occasions its complaints were not remedied or addressed until it complained to the County Sheriff's Office.  *Id*. ¶ 59.   Out Now alleges on information and belief that GTL "concealed the technical difficulties they were having to make more money from bail bond agencies that inmates attempted to contact."  *Id*. ¶ 60.  On September 13, 2012, an inmate allegedly called Out Now and reported that "Out Now's phones had been down for eight

days." *Id*. ¶ 62.  Out Now alleges that on October 29, 2012, a client reported not being able to reach Out Now's office and hearing a recording that Out Now had a $500 balance.  *Id*. Out Now alleges that it did not consent to having this confidential information disclosed to any client or third party.  *Id*.  Out Now alleges that on January 8, 2013, "after Out Now continued to attempt to resolve its customer service issues, in part be requesting an increase of its limit from $500 per month to $1500 per month, Out Now was wrongfully sent to collections."  *Id*. ¶ 63.

Based on these factual allegations, Plaintiff asserts the following claims:

1) Claim One (Breach of Written Contract Third Party Beneficiary based on Contract between GTL and the County); alleging that "[t]hroughout the entire contract period, Defendant was in breach of the contract by failing to provide the County and third party beneficiaries such as Plaintiff with the contracted-for services, namely, a reliable inmate telephone system that was in good working order."  FAC ¶ 70.

2) Claim Two (Breach of Implied Contract); alleging the existence of an implied contract based on a "course of conduct and/or as a result of a personal understanding between Plaintiff and Defendant," FAC ¶ 74, and that GTL breached that contract "[b]eginning on or about August 2008, and continuing to the end of the contract term . . . by a series of acts, including but not limited to: repeatedly interrupting Plaintiff's telephone service; charging Plaintiff for calls that were not completed; overcharging Plaintiff; interrupting Plaintiff's telephone service in retaliation for making customer service complaints; negligently maintaining its equipment; charging Plaintiff for calls where the call quality was too poor to be heard; setting unreasonably low limits for the amount Out Now can spend on calls per month; refusing to raise limits for the amount Out Now can spend on calls per month; repeatedly promising to raise limits for the amount Out Now can spend on calls per month, and then failing to do so; refusing to refund charges for dropped calls; placing Out Now's account in collections despite the fact it is current on its bills, and usually overpays, in retaliation for complaints; disclosing confidential information to third parties without Out Now's permission, including account balance limits; and cutting off phone service because Out Now had allegedly spent more than its monthly limit, despite the fact that this limit is not mentioned in the Terms and Conditions or on Out Now's bills."  FAC ¶ 77.

3) Claim Three (Breach of Written Contract based on Terms and Conditions sent with Out Now's bills from GTL); alleging that on November 3, 2011 Plaintiff and Defendant entered into a written contract based on the Terms and Conditions sent to Out Now by GTL when it began direct billing, FAC ¶ 81, and that "[b]eginning on or about August of 2008, and continuing to the end of the contract term," Defendants breached the contract "by a series of acts, including but not limited to" the acts alleged in support of Claim Two.  FAC ¶ 84.

United States District Court
Northern District of California

4) Claim Four (False Advertising in violation of Cal. Bus. & Prof. Code §§ 17500 *et seq.*); alleging that: a) beginning in 2008, GTL has "engaged in advertising to the public, including Plaintiff, offering to perform the service of reliably permitting members of the public to communicate by phone with persons incarcerated in correctional facilities;" b) "[t]he advertising includes but is not limited to statements on Defendant's website as well as the Terms and Conditions attached to bills sent to customers, copies of which are attached as Exhibits 3, 4, 5, and 6 and made part of this pleading." FAC ¶ 87.

5) Claim Five (Unfair/Unlawful Competition in violation of Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("hereinafter, "the UCL Claim")); alleging "unfair" practices and "unlawful" practices (violation of: a) the First Amendment to the U.S. Constitution; b) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1770(a)(5), (a)(7) and (a)(16); and c) the Federal Communications Act, directly and under 47 C.F.R. § 64.2401). FAC ¶¶ 95-96.

6) Claim Six (Intentional Interference with Prospective Economic Advantage). FAC ¶¶ 98-105.

7) Claim Seven (Negligent Interference with Prospective Economic Advantage). FAC ¶¶ 106-113.

8) Claim Eight (Negligence). FAC ¶¶ 114-118.

9) Claim Nine (Violation of Federal Communications Act). FAC ¶¶ 119-122.

Plaintiff seeks an award of compensatory and punitive damages, interest thereon, and costs of suit. FAC ¶ 122. In addition, as to the UCL Claim and the Negligence Claim, Out Now requests "full restitution and/or disgorgement of all revenues, earnings, profits, compensation and benefits that may have been obtained by Defendants" as a result of the alleged violations. FAC ¶¶ 97, 118.

**B.**     **Procedural Background**

Out Now commenced this action against GTL by filing a complaint in the Superior Court for the County of San Mateo on February 8, 2013. Notice of Removal, ¶ 2 & Ex. A (Complaint). On March 12, 2013, Defendant removed the action to federal court on the basis of diversity jurisdiction. On April 5, 2013, Defendant filed a motion to dismiss the complaint, which was denied as moot on April 26, 2013, after Plaintiff filed an amended complaint. On May 10, 2013, GTL filed the instant Motion seeking dismissal of the amended complaint.

8

United States District Court
Northern District of California

### C.      The Motion

GTL seeks dismissal of all of Plaintiff's claims under Rule 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure.  First, GTL contends that all of Plaintiff's claims are time-barred because they are based on conduct that began in 2008, outside the applicable limitation periods for Plaintiff's claims.  Motion at 3.  According to GTL, even though California courts permit recovery for the subset of wrongs that occurred within the limitations period, Out Now cannot save its claims on this basis because the allegations in the complaint that the applicable conduct continued after 2008 are too vague and conclusory to avoid the limitation periods.  *Id*. at 4-5 (citing *Armstrong v. Tri-Valley*, 116 Cal. App. 4th 1375, 1388-94 (2004); *Glue-Fold, Inc. v. Slautterback Corp*., 82 Cal. App. 4th 1018, 1030 (2000)).

Second, GTL contends Plaintiff's claim for breach of written contract based on the contract between the County and GTL (Claim One) fails because Out Now was not an intended beneficiary of the contract between GTL and the County and therefore cannot sue to enforce the Contract as a third party beneficiary.  *Id*. at 5 (*Neverkovec v. Fredericks*, 74 Cal. 3th 337, 348 (1999)).  Further, even if Out Now could sue under the Contract, GTL contends, the complaint does not allege any actual breach of GTL's obligations.  *Id*. at 7.  To the extent Out Now alleges that the Contract required GTL to provide  "reliable" telephone service, GTL asserts, that obligation is contained in the "Project Objectives" section of the contract, which does not give rise to a binding obligation because it is only a goal.  *Id*. (citing *Webster's II New Riverside Dictionary* at p. 473 (Rev. Ed. 1996)).  Further, GTL contends, the contract provides for quarterly review of GTL's service "against established benchmarks."  *Id*. at 8 (citing Contract, Ex. A § 9).  According to GTL, this provision indicates that the parties to the Contract understood that the services provided by GTL would not be completely reliable; to the extent Out Now does not identify any breach of a benchmark established under the Contract, GTL contends, it fails to allege a breach of the Contract.  *Id*.

Third, GTL asserts that the claim for breach of an implied contract (Claim Two) fails because "an implied contract cannot exist where an express contract governs the same subject matter."  *Id*. at 8 (citing *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975)).  To the extent

Out Now alleges that there are two written contracts -- the Contract between GTL and the County and the Terms and Conditions sent to Out Now with its monthly bill -- it cannot base a claim for breach of contract on an implied contract giving rise to the same obligations as it alleges exist under the written contracts, GTL argues. *Id*. at 9.

Fourth, GTL argues that Plaintiff's claim for breach of written contract based on the Terms and Conditions (Claim Three) fails because Plaintiff does not identify any specific contractual obligation that was breached. *Id*. at 9-10.

Fifth, GTL argues Plaintiff's claim for false advertising (Claim Four) fails because: 1) it does not allege the violations with sufficient specificity to satisfy Rule 9(b) of the Federal Rules of Civil Procedure, as is required for false advertising claims; and 2) the specific statements alleged in the complaint to be misleading, such as the statement on GTL's website that it is "a leading provider of services," are the sorts of statements that have been held to be merely "puffery" and which cannot form the basis for a false advertising claim. *Id*. at 11-13.  In addition, GTL contends the claim fails because the only remedies available on a false advertising claim are restitution and injunctive relief, neither of which were requested by Out Now in its complaint. *Id*. at 13 (citing Cal Bus. & Prof. Code § 17535).  Further, GTL asserts, Out Now cannot show that it is entitled to any injunctive relief because the Contract between GTL and the County has now terminated and therefore, there is no threat of continuing harm. *Id*.

Sixth, GTL argues that Plaintiff's claim for unfair competition must be dismissed because Plaintiff has not alleged conduct that is either unlawful or unfair. *Id*. at 13 (citing Cal. Bus. & Prof. Code § 17200).  With respect to unlawful conduct, GTL contends Plaintiff must allege it engaged in a business practice that is forbidden by federal, state or local law. *Id*. at 13-14 (citing *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010)).  Plaintiff cannot allege viable claims based on the First Amendment or the CLRA, GTL contends, because it has not attempted to plead the specific elements required to show a violation of either. *Id*. at 14 (citing *Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1067 (E.D. Cal. 2010).  Further, GTL argues, Out Now cannot establish a violation of First Amendment rights because there were plenty of other bail bond agencies that inmates could reach, even if they could not reach Out Now,

United States District Court
Northern District of California

and therefore, there is no allegation that anyone's free speech rights were actually restrained.  *Id.*
In any event, GTL asserts, Plaintiff cannot bring a First Amendment claim against it because it is
not a state actor and was not acting under color of state law in providing services to the County.
*Id.* at 14-15.

With respect to the alleged violation of the CLRA, which prohibits certain false
representations to consumers, GTL argues that this claim must be pled with specificity under Rule
9(b) and that Plaintiff does not meet this heightened pleading standard for the same reasons the
false advertising claim is not adequately pled.  *Id.* (citing *Kearns v. Ford Motor Co.*, 567 F.3d
1120, 1125 (9th Cir. 2009)).

Finally, to the extent the UCL claim is based on alleged violation of the FCA, GTL asserts
that it fails for the same reason Claim Nine (Plaintiff's FCA claim) fails, discussed below.  *Id.* at
15-16.

With respect to the "unfair" prong of the UCL, GTL argues that Out Now's claim fails
because it must allege "conduct that threatens an incipient violation of an antitrust law, or violates
the policy or spirit of one of those laws because its effects are comparable to or the same as a
violation of the law, or otherwise significantly threatens or harms competition."  *Id.* at 16 (quoting
*Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1364 (2010)(citing *Cel-Tech
Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 187 (1999))).  GTL
contends Out Now does not meet this standard because it has not alleged that any conduct on the
part of GTL has an anti-competitive effect.  *Id.* at 17.

GTL also contends the UCL claim fails because it has requested the wrong remedy.  *Id.* at
17.  In particular, GTL argues that Plaintiff seeks non-restitutionary disgorgement of profits
whereas under the UCL, the only restitution available is specific money or property in which the
plaintiff has an ownership interest.  *Id.* at 18 (citing *Korea Supply Co. v. Lockheed Martin Co.*, 29
Cal. 4th 1134, 1148-51 (2003)).

Seventh, GTL argues that Plaintiff's claims for intentional and negligent interference with
prospective economic advantage  (Claims Six and Seven) fail as a matter of law because: a) Out
Now has not alleged any existing economic relationship with the probability of future economic

benefit, which is required to state a claim as to both claims; 2) Out Now does not plead any facts showing that the alleged interference by GTL was intentional, as is required as to Claim Six; and 3) Plaintiff fails to allege any "independently wrongful conduct," which is required as to both claims. *Id*. at 19-21.

Eighth, GTL argues that the claim for negligence (Claim Eight) should be dismissed because based on the facts alleged, and considering the factors set forth by California courts for determining whether a duty of care exists, GTL does not owe a duty of care to Plaintiff , which is a question of law. *Id*. at 21 (citing *Weirum v. RKO Gen., Inc.*, 15 Cal. 3d 40, 46 (1975); *Taylor v. Elliott Turbomachinery Co., Inc.*, 171 Cal. App. 4th 564, 593 (2009)). In addition, GTL argues that the negligence claim fails because it is based on the same conduct as the contract claims and therefore constitutes an impermissible attempt to convert a breach of contract claim into a tort claim. *Id*. at 22 (citing *Arnts Contracting Co v. St. Paul Fire and Marine Ins. Co.*, 47 Cal. App. 4th 464, 479 (1996);  *Khoury v. Maly's of California, Inc*., 14 Cal. App. 4th 612, 618 (1993)).

Finally, GTL argues that Plaintiff fails to state a claim under the FCA. *Id*. at 23-24.   In addition to the conclusory nature of the allegations, GTL asserts, the alleged wrongful conduct -- GTL's failure to provide reliable services -- is not covered by either Section 201(b) of the FCA, which addresses whether consumers are charged fair and reasonable rates, or 47 C.R.F. § 64.2401, which regulates the contents of billing statements. *Id*.  Further, GTL argues that there is no private right of action under Section 201(b) because the Federal Communications Commission has made no determination that any rates at issue in this case are unreasonable, which is a prerequisite for a private actor to bring an action under this provision. *Id*. (citing *North County Communications Corp. v. Cal Catalog & Tech.*, 594 F.3d 1149, 1158-59 (9th Cir. 2010)).

In its Opposition, Out Now argues that its claims are timely and adequately alleged, and that Defendants have engaged in selective reading of the complaint.  Opposition at 2.  To the extent the Court may find that the complaint alleges insufficient facts, she requests leave to amend to allege more specific facts. *Id*. at 7.

With respect to the timeliness of the claims, Plaintiff contends the allegations are sufficient to establish that the continuing violation theory applies. *Id*. at 8-9 (citing *Armstrong Petroleum*

United States District Court
Northern District of California

12

1    *Corp. v. Tri-Valley Oil & Gas Co*., 116 Cal. App. 4th 1375, 1388 (2004).  In support of the theory

2    of continuous accrual, Plaintiff cites to the following allegations:  FAC ¶¶ 27-32, 53, 55, 58, 60-

3    63.  *Id*. at 9.  Plaintiff  further asserts that it is not required to allege when specific conduct

4    occurred in order to state a claim.  *Id*.

5       As to Claim One, Plaintiff rejects GTL's assertion that Out Now is not an intended

6    beneficiary of the Contract between GTL and the County, arguing that a beneficiary need not be

7    expressly named in a contract to be an intended beneficiary.  *Id*. at 10 (citing *COAC, Inc. v.*

8    *Kennedy Eng'g*, 67 Cal. App. 3d 916, 919-20 (1977)).  In support of its position that it is an

9    intended beneficiary of the contract, even if it is not named, Plaintiff points to the following

10    reference to bail bond agencies in the contract:

      <u>COUNTY  RESPONSIBILITIES</u>

11       The County will:

12       . . .

13       To the best of the Sheriff's knowledge and ability, provide a list of
14       office telephone numbers of bail bond firms transacting business in
       San Mateo County.  Provide regular updates to the list of office
15       telephone numbers  of bail bond firms transacting business in San
       Mateo County as new information becomes available to County.

16    *Id*. (citing FAC, Ex. 1 at 12).  Plaintiff further contends that the breach of the Contract is alleged in

17    detail to the extent that the Contract provided that GTL was to provide a "fully-operational" and

18    "reliable" telephone system and Plaintiff alleged many problems with the service provided.  *Id*. at

19    10-11.  Plaintiff rejects GTL's arguments that the promise of reliable service is merely

20    aspirational, citing language in the contract stating that the "inmate telephone system . . . shall

21    comply in all respects with Exhibit A to this Agreement."  *Id*. at 11 (citing FAC, Ex. 1 at 1).  Such

22    language, Plaintiff contends, indicates that the provision of reliable service is an obligation under

23    the Contract and not optional, as GTL suggests.  *Id*.

24       With respect to Claims Two and Three, breach of implied contract and breach of the Terms

25    and Conditions, Plaintiff argues that while an implied contract may not cover the same subject

26    matter as a written contract, this does not bar Plaintiff from asserting such claims in the

27    alternative.  *Id*.  Furthermore, Plaintiff asserts, breach of an implied contract and of an express

28

United States District Court<br>Northern District of California

contract may cover the same subject matter if the conduct at issue takes place in different time periods; here, Plaintiff contends that up to November 2011 there was an implied contract and that after that time, there was an express contract covering the same subject matter. *Id*. at 12.[3]  As to the Terms and Conditions, Plaintiff alleges that they may be an express contract or evidence of an implied contract. *Id*.  Either way, Plaintiff's allegations that GTL repeatedly terminated Out Now's service without notice, even when Out Now paid its bills on time, is adequate to state a claim for breach of contract, Plaintiff contends. *Id*.

Plaintiff also asserts the False Advertising Claim (Claim Four) is adequately pleaded. *Id*. at 13.  Plaintiff does not dispute that the pleading requirements of Rule 9(b) apply to this claim but contends the "who, what, where and how" of the claim are adequately alleged. *Id*.   Plaintiff points to the four documents that were cited in the complaint and attached as Exhibits 3-6. According to Plaintiff, she has alleged facts showing what the documents are, when they were disseminated and how they are false, namely, "because they falsely inflate the reliability of GTL's products." *Id*.  Plaintiff rejects the argument that the statements cannot be the basis of a false advertising claim because they are "puffery,"  citing the statement that GTL's "call completion percentages are some of the highest in the county," which Plaintiff contends is similar to a statement in *Lavie v. Proctor & Gamble Co*., 105 Cal. App. 4th 496, 500-502 (2003) that was the subject of a false advertising claim.

Plaintiff contends the UCL claim is adequately pled as well because Out Now has alleged conduct that is both unlawful and unfair. *Id*. at 14.  As to the alleged First Amendment violation, Plaintiff rejects GTL's assertions that: 1) inmates' free speech rights were not curtailed; and 2) GTL was not a state actor with respect to the services it provided. *Id*. at 14-15.   Plaintiff contends inmates were denied their First Amendment rights because they allegedly were "not permitted to speak to the specific person or business that they attempted to contact." *Id*.  Further, Plaintiff

---

[3] Plaintiff also suggests that in an earlier motion to dismiss, GTL implied there was a written contract (of which Plaintiff was unaware) prior to the November 2011 Terms and Conditions. Plaintiff states that to the extent GTL now concedes there is no such written agreement, it should be permitted to amend its complaint to allege that the breach of contract in Claim Three began in November 2011.

1    asserts, GTL was acting under color of state law because it provided services intended to "enabl[e]

2    free speech in a government facility where the government grants inmates the right to

3    communicate." *Id*. at 15 (citing *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 723-24

4    (1964)).

5    Plaintiff also argues that it has adequately alleged a violation of the CLRA to support its

6    UCL claim.  *Id*.  According to Plaintiff, the three provisions of the CLRA upon which it relies --

7    1770(a)(5), (a)(7) and (a)(16) -- prohibit businesses from representing to customers (such as

8    inmates in this case) that they are providing services that are not of the kind or quality promised.

9    *Id.* at 15.  According to Plaintiff, "every time Out Now's phones were down without justification,

10   GTL was misrepresenting to the consumers that it could contact anyone with a valid account,

11   when in fact this was not true." *Id*.  (citing FAC ¶ 48).  Plaintiff states that the misrepresentations

12   that are the basis of its UCL/CLRA claim are the same ones that support its false advertising claim

13   "and they are actionable for the same reasons."  *Id*.

14   As to the UCL claim based on violation of the FCA, Plaintiff contends billing it for

15   services that were inadequately performed violates both Section 201(b) of the FCA and 47 C.F.R.

16   § 64.2401.  *Id*. at 15-16.

17   Plaintiff also argues that it has adequately alleged that Defendant engaged in an unfair

18   business practice.  *Id*. at 16.  According to Plaintiff, the "unfair" prong of the UCL relies on the

19   jurisprudence relating to Section 5 of the Federal Trade Commission Act ("FTCA").  *Id*. (citing

20   *Cel-Tech*, 20 Cal. 4th at 187).  Section 5 of the FTCA, in turn, has been held to require that the

21   injury that results from the allegedly unfair practice must be substantial, not outweighed by any

22   countervailing benefits to  consumers or competition, and one which could not have been

23   reasonably avoided by the consumers."  *Id*. (citing *Orkin Exterminating Co. v. F.T.C.*, 849 F.2d

24   1354, 1364 (11th Cir. 1988)).  Plaintiff asserts that all of these requirements are adequately

25   alleged, citing the allegations in the amended complaint at ¶¶ 45 and 52-56.  *Id*.  Plaintiff further

26   asserts that the *Orkin* case stands for the proposition that unilaterally breaching a contract may be

27   sufficient to support a federal unfair competition claim.  *Id*.

28   With respect to the remedies sought by Plaintiff on the UCL claim, Out Now alleges that

United States District Court
Northern District of California

15

United States District Court
Northern District of California

1    they are proper to the extent Plaintiff requests "restitution of monies that [Plaintiff] has a property

2    interest in." *Id*. at 17 (citing FAC ¶ 58).

3         Plaintiff argues that her claims for intentional and negligent interference with prospective

4    economic advantage (Claims Six and Seven) are adequately alleged.  First, she rejects the

5    argument that Plaintiff has not alleged facts showing GTL's conduct interfered with an economic

6    relationship that was likely to result in future economic benefit.  *Id*. at 17-18.  According to

7    Plaintiff, the relationship between Out Now and its future customers is not too speculative to

8    establish this element of the claims because Plaintiff  "describes two different factual scenarios

9    that caused Plaintiff to lose clients," namely, customers who were lost because calls they

10   attempted to make to Out Now were disrupted and "word-of-mouth" damage.  *Id*. (citing FAC ¶¶

11   12, 52-58, 61-62).   Plaintiff also asserts that sufficient facts have been alleged to establish that the

12   interference was intentional, including the allegation that GTL cut off telephone service in

13   retaliation for complaints made to GTL's customer service.  *Id*. at 19 (citing FAC ¶ 101).  Finally,

14   Plaintiff asserts that the conduct at issue is "independently wrongful" based on the "five separate

15   laws" that are alleged in the complaint to have been violated.  *Id*.

16        Plaintiff rejects GTL's assertion that the negligence claim (Claim  Eight) fails because

17   GTL does not owe a duty of care to Plaintiff.  *Id*. at 19.  According to Plaintiff, GTL had a duty

18   "not to engage in misfeasance," that is, "not to make a situation worse when the defendant had

19   chosen to act and created a risk."  *Id*. at 20 (citing 89 Cal. App. 4th 1068, 1079 (2001)).  Plaintiff

20   argues that it has alleged a breach of that duty by alleging that GTL failed to provide reliable

21   telephone service.  *Id*.  Plaintiff also rejects GTL's assertion that Plaintiff's negligence claim fails

22   because it is an attempt to convert a contract claim to a tort claim, arguing that "Plaintiff has

23   alleged intentional, retaliatory conduct that goes beyond the realm of breach of contract."  *Id*. at 21

24   (citing FAC ¶¶ 33-39, 63).  Plaintiff also points to its allegation that GTL concealed technical

25   difficulties, which it contends also goes beyond breach of contract.  *Id*. (citing FAC ¶ 61).

26        Finally, Plaintiff argues that she has stated a claim under the FCA for the same reasons

27   discussed above in connection with the UCL claim.  *Id*. at 21.  In particular, Plaintiff alleges that

28   "[i]n essence, GTL billed Plaintiff and others for services that were not provided, then failed to

1    disclose that the service[s] were not provided." *Id.* (citing FAC ¶ 49). According to Plaintiff, this

2    is a violation of Section 201(b) of the FCA. *Id.*

3    **III.    ANALYSIS**

4         **A.    Legal Standard**

5              **1. Rule 12(b)(6)**

6         A complaint may be dismissed for failure to state a claim for which relief can be granted

7    under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The

8    purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

9    complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Thus, in

10   ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact

11   as true and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of*

12   *Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Generally, a plaintiff's burden at the

13   pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a]

14   pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the

15   claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Nonetheless, a complaint

16   may be dismissed based on a lack of a cognizable legal theory or on the absence of facts that

17   would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

18   1990).

19        The Supreme Court has made clear that to survive a motion to dismiss, a complaint must

20   "contain either direct or inferential allegations respecting all the material elements necessary to

21   sustain recovery under some viable legal theory." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

22   562 (citing *Car Carriers, Inc. v. Ford Motor Co*., 745 F.2d 1101, 1106 (7th Cir. 1984)). Further,

23   the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. at

24   555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). To survive a motion to dismiss, a

25   complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

26   "plausible on its face." *Id*. at 570. In *Ashcroft v. Iqbal*, the Court explained that "a claim has

27   facial plausibility when the plaintiff pleads factual content that allows the court to draw the

28   reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. 662, 678

United States District Court
Northern District of California

1   (2009).

2   **2. Rule 9(b)**

3   Fraud claims and claims that sound in fraud are required to meet the pleading requirements

4   of Rule 9(b) of the Federal Rules of Civil Procedure.   *Kearns v. Ford Motor Co*., 567 F.3d 1120,

5   1125 (9th Cir. 2009).  Rule 9(b) provides as follows:

6   
7   > In alleging fraud or mistake, a party must state with particularity the
circumstances   constituting   fraud   or   mistake.   Malice,   intent,
knowledge, and other conditions of a person's mind may be alleged
generally.

8   

9   Fed. R. Civ. P. 9(b).  In *Vess v. Ciba-Geigy Corp.*, the Ninth Circuit explained that the heightened

10   pleading requirement under Rule 9(b) "demands that, when averments of fraud are made, the

11   circumstances constituting the alleged fraud be specific enough to give defendants notice of the

12   particular misconduct . . . so that they can defend against the charge and not just deny that they

13   have done anything wrong."  317 F.3d at 1106.  Thus, "[a]verments of fraud must be accompanied

14   by the who, what, when, where, and how of the misconduct charged."  *Id*. (citation and quotation

15   omitted).

16   **B.      Whether Claims are Time-barred**

17   GTL contends Plaintiff's claims are time-barred because each of Plaintiff's claims has a

18   limitation period of between two and four years and Plaintiff alleges that the relevant conduct

19   occurred over four years ago, beginning in August 2008.[4] Further, to the extent that Plaintiff

20   alleges continuing violations, GTL contends its allegations relating to subsequent conduct are too

21   conclusory to meet Plaintiff's burden of showing that the claims are not time-barred.  The Court

22   finds that the allegations in the complaint are sufficient to allege violations within the applicable

23   

24   _____

[4] In particular, GTL contends the following limitation periods apply to Plaintiff's claims: four

25   years for breach of a written contract (Cal. Civ. Proc. Code § 337); two years for breach of an oral
or implied contract (*id*. at § 1339); three years for a false advertising claim under California

26   Business & Professions Code §§ 17500, et seq. (Cal. Code Civ. § 338(a)); four years for a
claim under Section 17200 (Cal. Bus. & Prof. Code § 17208); two years for claims of intentional

27   or negligent interference with prospective economic advantage (*Reudy v. Clear Channel
Outdoors, Inc*., 693 F. Supp. 2d1091,1121 (N.D. Cal. 2010); Cal. Civ. Proc. Code $ 339(1)); two

28   years for a general negligence claim (Cal. Civ. Proc. Code § 335.1); and two years for violations
of the Federal Communications Act (47 U.S.C. § 415(b)).

time periods and therefore declines to find that Plaintiff's claims are time-barred to the extent they are based on conduct that occurred within the applicable limitation periods.  To the extent the claims are based on conduct that occurred outside the applicable limitation periods, the claims are dismissed.[5]

Under California law, the general rule is that a cause of action arises "'when, under the substantive law, the wrongful act is done,' or the wrongful result occurs, and the consequent 'liability arises .....'" *Norgart v. Upjohn Co.*, 21 Cal. 4th 383, 397 (1999) (quoting 3 Witkin, Cal. Procedure, Actions, § 459, p. 580).  "Where there is a continuing wrong, however, with periodic new injury to the plaintiff, the courts have applied what Justice Werdegar has termed a 'theory of continuous accrual.'"  *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal.App.4th 1375, 1388 (2004).  Thus, in cases involving the performance of contractual obligations where performance "is severed into intervals," such as agreements under which payments are made on a periodic basis, a breach of contract claim "attacking the performance for any particular interval must be brought within the period of limitations after the particular performance was due."  *Id.*

Here, Plaintiff's claims are based on the allegation that GTL repeatedly engaged in wrongful conduct.  While the complaint is replete with conclusory allegations, it also contains specific allegations of wrongful conduct within the applicable limitations periods.  *See, e.g.,* FAC ¶¶ 35-38 (alleging retaliatory decrease in call limit and three- week disruption of telephone service in November 2011); ¶ 54 (alleging disconnection of Out Now's telephone service for two and half months in 2011 and three months in 2012); ¶ 62 (alleging that on September 13, 2012 and October 29, 2012 Out Now received calls from clients reporting that they had not been able to reach Out Now and that telephone service had been down for eight days);  ¶ 63 (alleging that on January 8, 2013, Out Now was wrongfully sent to collections after asking for a limit increase from $500 a month to $1500 month); ¶¶ 28-31 (citing examples of allegedly misleading statements displayed

---

[5] The Court notes that Plaintiff does not contend that any of her claims were equitably tolled prior to the filing of the complaint, on February 8, 2013.  Therefore, the relevant cut-off dates for Plaintiff's claims are as follows:  February 8, 2009 as to Claims One and Three (breach of written contract claims),  and Claim Five (UCL claim);  February 8, 2010 as to Claim Four (false advertising claim); and February 8, 2011 as to the remaining claims.

United States District Court
Northern District of California

on GTL's website at the time of the filing of Plaintiff's amended complaint, in April 2013).  At the pleading stage of the case, these allegations are sufficient to establish that the claims are timely as to conduct within the applicable limitations periods (though the claims may fail for other reasons, as discussed below).  Accordingly, the Court grants the Motion as conduct that occurred outside of the applicable limitation periods and denies the Motion as to conduct that occurred within those periods.

### C.      Breach of Written Contract between GTL and the County (Claim One)

Defendant contends Plaintiff's claim for breach of the Contract between GTL and the County fails because Out Now is not an intended beneficiary of that Contract.  The Court agrees.

Under California law, a third party may sue to enforce a contract only if it is an *intended* beneficiary of the contract.  *Neverkovec v. Fredericks*, 74 Cal.App.4th 337, 348 (1999).  While a party need not be expressly named in the contract to meet this standard, "[t]he circumstance that a literal contract interpretation would result in a benefit to the third party is not enough to entitle that party to demand enforcement."  *Id*.  Rather, the third party must demonstrate that "the promise he seeks to enforce was actually made to him personally or to a class of which he is a member."  *Id*.  Courts determine whether this standard is met by reading the contract as a whole in light of the circumstances under which it was made.  *Id*. at 349.

Out Now has pointed to nothing in the Contract that indicates the parties intended to make any promises to Out Now or to bail bond agencies generally.  Out Now's reliance on a reference to bail bond agencies in the Contract is misplaced.  The statement upon which Out Now relies to establish it was an intended beneficiary, *see* FAC, Ex. 1 at 12, merely requires the County to provide GTL with a list of bail bond agencies transacting business in the County.  While one can reasonably infer this provision was intended to confer a benefit on GTL, whose revenues depended on the ability of inmates to contact bail bond agencies, it does not reflect any promises to the bail bond agencies on the part of GTL or the County.  At most, it reflects the fact that the Contract resulted in a benefit to bail bond agencies, including Out Now.  That, however, is not sufficient to establish that Out Now was an intended beneficiary of the Contract.  Nor has Out Now alleged any facts (or suggested there might be facts it *could* allege) suggesting that the

1   circumstances under which the Contract was made would support such an inference.  Accordingly,

2   the Motion is granted as to Claim One, which is dismissed.

3           **D.        Breach of Implied and Express Contract (Claims Two and Three)**

4           Defendant argues that the breach of implied contract claim asserted in Claim Two fails

5   because it is based on the same breach as is alleged  in Claim Three, based on the Terms and

6   Conditions.  As to Claim Three, GTL asserts the claim fails because the alleged violations do not

7   fall within any obligation set forth in the Terms and Conditions.    In the Opposition brief, Out

8   Now clarifies that the implied contract claim (Claim Two) is aimed at conduct that occurred

9   *before* the first Terms and Conditions  were sent to it and that the express contract claim based on

10  the Terms and Conditions is intended to cover the period starting in November 2011.  For the

11  latter period, Out Now notes that the Terms and Conditions can be considered either an express

12  contract or evidence of an implied contract.   For the reasons stated below, the Court denies the

13  Motion as to Claim Two and grants the Motion as to Claim Three.

14          GTL's only challenge to the implied contract claim is that it impermissibly duplicates Out

15  Now's claims based on express written contracts, whether the Contract between the County and

16  GTL or the Terms and Conditions.  It is well established that "[t]here cannot be a valid, express

17  contract and an implied contract, each embracing the same subject matter, existing at the same

18  time."  *Wal-Noon Corp. v. Hill*, 45 Cal.App.3d 605, 613 (1975) (citing 66 Am.Jur.2d, Restitution

19  and Implied Contracts, § 6).   Nonetheless, this rule does not warrant dismissal of Plaintiff's claim

20  for breach of implied contract, at least at this early stage of the case.  First, to the extent Out Now

21  has stipulated that its breach of contract claim based on the Terms and Conditions did not

22  commence until November 2011, Claim Two is not barred under this rule on the basis of the

23  Terms and Conditions for the period prior to that time.  Second, as to the claim for breach of the

24  Terms and Conditions that occurred after November 2011 -- and to the extent Claim Two alleges

25  the same breaches that are alleged in Claim One (which is also based on a written contract),  the

26  Court considers these claims as pleading alternative theories, which is permissible under Rule

27  8(a)(3).  Fed. R. Civ. P. 8(a)(3); *see also Melbye v. Accelerated Payment Technologies, Inc.*, 2012

28  WL 5944644, at *4 (S.D.Cal., November 27, 2012) (rejecting challenge to jury verdict in favor of

United States District Court
Northern District of California

21

plaintiff based on breach of implied contract where the subject matter of the claim was addressed

in an Employee Handbook and finding that while an implied contract cannot cover the same

subject matter as an express contract, it was "far from clear" that the Employee Handbook was an

express contract; therefore, the jury was entitled to weigh the evidence and "reach the conclusion

that the Employee Handbook did not render the alleged implied contract invalid"). Therefore, the

Court rejects GTL's assertion that Claim Two must be dismissed because the alleged implied

contract covers the same subject matter as written contracts.[6]

On the other hand, the Court finds that Claim Three fails as a matter of law.   To state a

claim for breach of contract based on the terms and conditions, Out Now must identify a specific

contractual obligation that was breached. *Murphy v. Hartford Acc. & Indem. Co.*, 177 Cal.App.2d

539, 543 (1960) ("In order for an action to be based upon an instrument in writing, the writing

must express the obligation sued upon").   The harms alleged by Plaintiff in support of Claim

Three, summarized in FAC ¶ 84, do not constitute breaches of any specific term of the Terms and

Conditions.   Rather, Plaintiff's theory seems to be that this conduct constituted a breach because

there is no provision in the Terms and Conditions that permitted the allegedly wrongful conduct

on the part of GTL.   The Court finds no authority suggesting that a claim for breach of contract

may be stated on the basis of such a theory. *See In re Bank of America Credit Protection*

*Marketing & Sales Practices Litigation*,   2012 WL 1123863, at *3 (N.D.Cal., April 3, 2012)

_____

[6]The Court notes that GTL did not challenge the sufficiency of Plaintiff's allegations as to
the existence of an implied contract on any ground *other* than the fact that Plaintiff asserted
essentially the same claims on the basis of written contracts.  Whether Plaintiff alleged sufficient
facts to establish the existence of an implied contract is a separate question.  California law
recognizes two varieties of implied contract:  those that are implied in law under the equitable
theory that a contract to pay for services rendered is implied by law for reasons of justice and
those that are implied in fact based on actions by the parties evincing an intent to create a binding
contract." *Design Data Corp. v. Unigate Enterprise, Inc*.,  2013 WL 360542, at  *5 (N.D.Cal.,
Jan. 29, 2013) (citing *Hedging Concepts, Inc. v. First Alliance Mortgage Co*., 41 Cal.App.4th
1410, 1419, (1996);  *Weitzenkorn v. Lesser*, 40 Cal.2d 778, 794 (1953)).  An implied in law
contract is a quantum meruit claim under which the plaintiff may recover the value of the benefit
conferred.  *Id*.  Although Out Now has not specified which theory its claim is based upon, its
request for damages on Claim Two indicates that it is asserting the claim on the basis of an
agreement that is implied in fact.

United States District Court
Northern District of California

United States District Court
Northern District of California

(granting motion to dismiss breach of contract claim where allegedly wrongful conduct did not breach a specific term and further noting that the plaintiff had not been able to cite any authority "which clearly establishes that in a situation such as this, where the allegation is that breach lies not in the contravening of an express term, but in the exceeding of all express terms, breach of contract is an appropriate cause of action"). [7] Accordingly, the Court denies the Motion as to Claim Two and grants the Motion as to Claim Three, which is dismissed.

**E.     False Advertising**

Defendant contends Plaintiff's false advertising claim fails because it is alleged generally as to "statements on Defendant's website as well as the Terms and Conditions attached to bills sent to customers," FAC ¶ 87, and therefore does not meet the pleading requirements of Rule 9(b). Even as to the specific statements identified in the complaint as being misleading, *see* FAC ¶¶ 28-30, Defendant contends that they are mere "puffery" and therefore cannot be the basis for a false advertising claim.  In its Opposition brief, Out Now does not dispute that it is required to meet the heightened pleading requirements of Rule 9(b) to state a claim for false advertising.  It argues that it has met that standard, however, by identifying four documents that are allegedly misleading, attached as Exhibits 3-6 to the amended complaint.[8]  The Court concludes that these allegations are not sufficient to state a claim.

First, Out Now cites the Terms and Conditions, attached to the amended complaint as Exhibit 3, but does not identify any particular statements that are misleading or explain how they are misleading.  *See* FAC ¶ 87.  Therefore, the claim fails to the extent it is based on the Terms and Conditions.

Second, Out Now identifies particular statements made on GTL's website, shown on print-outs attached to the complaint as Exhibits 4, 5 and 6 to the amended complaint and quoted in full above.  FAC ¶¶ 28-30, 87.  These statements tout GTL as a "leading provider of the most

---

[7] The Court rejects Out Now's suggestion that the alleged interruptions in services amounted to "termination" within the meaning of the Terms and Conditions as there is no allegation that GTL ever formally terminated service to Out Now.

[8] Out Now implicitly concedes that its false advertising claim fails to the extent it purports to go beyond the four documents that are explicitly identified in the complaint.

23

advanced and reliable inmate telephone system in today's corrections industry," and represent that GTL's "call completion percentages are some of the highest in the industry." *Id.*, Exs. 4-6.  While these statements are specifically alleged, however, they are not the sort of statements that are actionable as false advertising.  Subjective statements concerning a product's superiority over an entire market are considered "puffery" that cannot support a false advertising claim.  *See, e.g., Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1043 (9th Cir. 2010) ("The first count was properly dismissed because it is mere commercial 'puffery' upon which a reasonable consumer could not rely. '[A]ll the advantages that only the nation's largest wireless company can provide' is a vague statement and provides nothing concrete upon which Shroyer could reasonably rely") (citation omitted);  *Viggiano v. Hansen Natural Corp.*, 2013 WL 2005430, at *10-11 (C.D.Cal.,May 13, 2013) (holding that False Advertising Claim under California Bus. & Prof. Code § 17500 based on statement on soda label describing it is "premium" soda failed to state a claim because it was mere puffery with no "concrete, discernible meaning"). While specific, measurable statements may be actionable as false advertising, *see Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246 (9th Cir.1990), none of the statements cited by Plaintiff in support of its false advertising claim fall into that category.  Therefore, the Court finds that Plaintiff fails to state a claim for false advertising.  Defendant's Motion is granted as to Claim Four, which is dismissed.

### F.   Unfair Competition

The UCL outlaws "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code, § 17200.  Plaintiff's UCL claim is based on conduct that is alleged to be "unlawful" and "unfair."  Plaintiff fails to state a claim on either ground.[9]

#### 1. Unlawful Conduct

Plaintiff contends GTL engaged in unlawful conduct on the grounds that it allegedly violated the First Amendment of the United States Constitution, California's Consumer Legal

---

[9] Because Plaintiff fails to state a claim under the UCL, the Court need not reach GTL's assertion that Plaintiff seeks the wrong remedy on this claim.

1    Remedies Act and the FCA.

2              Out Now alleges that inmates' First Amendment rights were violated because when "Out

3    Now's phones were down . . . they were not permitted to speak to the specific person or business

4    they attempted to contact." FAC ¶ 47.  It cites no authority, however, for the proposition that

5    inmates have such a right.  Indeed, the Ninth Circuit has held that while "prisoners have a First

6    Amendment right to telephone access, this right is subject to reasonable limitations arising from

7    the legitimate penological and administrative interests of the prison system." *Johnson v. State of*

8    *California*, 207 F.3d 650, 656 (9th Cir. 2000)( rejecting inmates claim that his First Amendment

9    rights were violated because the prison conspired with the telephone company to overcharge

10   inmates for telephone calls);  *see also Holloway v. Magness*, 666 F.3d 1076, 1078-1080  (8th Cir.

11   2012) (holding that alleged excessive charges on telephone calls provided to inmates under a

12   contract between prison and GTL did not violate inmate's First Amendment rights and citing

13   *Johnson* in support of conclusion).  Further, Plaintiff does not allege that the problems Out Now

14   had with its telephone service affected inmates' ability to reach other bail bond agencies or that

15   inmates were denied telephone access altogether.  Therefore, Plaintiff does not state a viable UCL

16   claim under the First Amendment.

17             Out Now also relies on the CLRA in support of the UCL claim.  *See* FAC   ¶ 96.  In FAC ¶

18   48, Plaintiff alleges that the CLRA was violated because "each and every time Out Now's phones

19   were down without justification, GTL was misrepresenting to the consumers that it could contact

20   anyone with a valid account, where in fact this was not true."  In its Opposition brief, Out Now

21   explains that the UCL/CLRA claim is based on the "very [misrepresentations] mentioned in

22   connection with the false advertising claim."  Opposition at 15.  Because this theory sounds in

23   fraud, it must be alleged with particularity under Rule 9(b).  *Kearns v. Ford Motor Co*., 567 F.3d

24   1120, 1125 (9th Cir. 2009).  Further, to the extent Out Now relies on the statements discussed

25   above, in connection with the false advertising claim, Out Now cannot state a claim based on

26   violation of the CLRA for the same reason it cannot state a claim for false advertising, namely, the

27   statements alleged to be misleading are nonactionable puffery.

28             Finally, Out Now relies on Section 201(b) of the FCA and 47 C.F.R. §64.2401 in support

United States District Court
Northern District of California

25

United States District Court
Northern District of California

1   of its UCL claim.  Section 201(b) provides that "[a]ll charges, practices, classifications, and

2   regulations for and in connection with such communication service, shall be just and reasonable,

3   and any such charge, practice, classification, or regulation that is unjust or unreasonable is

4   declared to be unlawful[.]"  47. U.S.C. § 201(b).  However, the Ninth Circuit has held that "it is

5   within the [Federal Communications] Commission's purview to determine whether a particular

6   practice constitutes a violation for which there is a private right to compensation."  *North County*

7   *Communications Corp. v. California Catalog & Technology*, 594 F.3d 1149, 1158 (9th Cir. 2010).

8   While a regulation adopted by the Federal Trade Commission directly addressing the conduct

9   alleged to violate § 201(b) would likely meet this requirement, thus allowing a private party to

10   bring an action under this sections,[10] the provision cited by Out Now only addresses the

11   *organization* of bills;  it does not reflect any determination as to whether the  charges themselves

12   are "just and reasonable" under any particular circumstances.  Accordingly, the Court concludes

13   Out Now's UCL claim fails to the extent it is based on alleged violations of the FCA.

14           **2.  Unfair Conduct**

15        California case law is in flux as to how to determine what constitutes "unfair" conduct

16   under the UCL.  In cases involving unfairness to competitors, the California Supreme Court has

17   held that "unfair" means "conduct that threatens an incipient violation of an antitrust law, or

18   violates the policy or spirit of one of those laws because its effects are comparable to or the same

19   as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel–Tech*

20   *Comms., Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal.4th 163, 187, (1999).   It is less clear what

21   test applies to UCL claims alleging that a practice is unfair based on conduct that harms

22   consumers.  *See Lozano v. AT&T Wireless Services, Inc*., 504 F.3d 718, 735-736 (9th Cir. 2007).

23   Prior to *Cel-Tech*, California courts applied a balancing test involving balancing the harm to the

24   consumer against the utility of the defendant's practice to determine whether practices were unfair

25   under the UCL, regardless of whether the claim involved anti-competitive conduct or anti-

26

27

28

---

[10] The Court notes that Out Now did not respond to GTL's argument that under the Ninth Circuit's decision in the *North Country* case, Out Now cannot assert a claim under the FCA because there is no private right of action under the circumstances here.

1    consumer conduct.  *Id.* (citing *South Bay Chevrolet v. General Motors Acceptance Corp.*, 72

2    Cal.App.4th 861, 884 (1999)).  In the wake of the *Cel-Tech* decision, however, California courts

3    of appeal have reached conflicting conclusions as to whether the balancing approach of *South* Bay

4    remains applicable as to UCL claims based on the latter category of UCL claims.

5         In *Lozano*, the Ninth Circuit affirmed a district court decision certifying a class as to a

6    UCL claim involving alleged anti-consumer conduct based, in part, on its application of the *South*

7    *Bay* balancing test.  *Id.* at 734-735.  The district court did not apply the *Cel-Tech* test.  *Id.*  The

8    Ninth Circuit stated, "[b]ecause adopting one standard does not necessitate rejection of the other,

9    we hold that, no matter the status of *Cel-Tech*, the district court did not apply the wrong legal

10   standard by relying on the balancing test from *South Bay*."  *Id.* at 736.  The court noted further

11   that "[i]n the absence of further clarification by the California Supreme Court, we endorse the

12   district court's approach to the law as if it still contained a balancing test."  *Id.*

13        Based on the allegations in its amended complaint, the Court concludes that Plaintiff's

14   UCL claim is based on harm to competition rather than consumer injury.  *See* FAC ¶ 45.  Thus,

15   Plaintiff's UCL claim based on alleged unfair conduct survives GTL's Motion only if Plaintiff's

16   allegations satisfy the *Cel-Tech* test.  The Court concludes that they do not.

17        Plaintiff's claim based on alleged monopolization of the market fails to establish any

18   antitrust violation, or incipient violation.  While Section 2 of the Sherman Antitrust Act prohibits

19   a person from "monopoliz[ing] any part of the trade or commerce of the United States," 15 U.S.C.

20   § 2, it is apparent from the face of the complaint that GTL cannot monopolize the bail bond

21   industry because it is not in that business.  Nor is there any allegation that GTL has monopoly

22   power as to provision of telephone services to prison inmates.  Even if Plaintiff were to allege

23   such monopoly power, the claim would likely fail to the extent GTL is operating under a

24   government contract that presumably was the product of open bidding among providers of inmate

25   telephone services.  *See Kirk-Mayer, Inc. v. Pac Ord, Inc.*, 626 F. Supp. 1168, 1171 (1986 C.D.

26   Cal.) (holding that where a government contractor obtains a contract for a fixed term at a fixed

27   price in open bidding against a number of other bidders, the contractor does not have the power to

28   control prices or exclude competition for the purposes of Section 2 of the Sherman Act).  Nor has

United States District Court
Northern District of California

27

1   Plaintiff identified any specific antitrust violation associated with the allegation that GTL treated

2   bail bond agencies differently depending on the amount of the advance paid by the particular bail

3   bond agency.

4          Out Now's reliance on Section 5 of the Federal Trade Act and the Eleventh Circuit's

5   decision in *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354, 1364 (11th Cir. 1988) does not

6   save its claim.  Section 5 provides that "[u]nfair methods of competition in or affecting commerce,

7   and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."

8   In *Cel-Tech*, the court explained that:

> Section 5 contains two prohibitions: one against "unfair methods of
> competition" and the other against "unfair or deceptive acts or
> practices." The former generally governs injuries to competitors, the
> latter injuries to consumers as well as competitors. . . Our notice of
> federal law under section 5 means *only that federal cases
> interpreting the prohibition against "unfair methods of competition"*
> may assist us in determining whether a particular challenged act or
> practice is unfair under the test we adopt. We do not deem the
> federal cases controlling or determinative, merely persuasive.

14   20 Cal. 4th at186 n. 11 (emphasis added).  The *Orkin* case, however, is a case involving harm to

15   consumers, not competitors.  *See*  849 F.2d  at 1364 (characterizing case as a "consumer

16   unfairness" case).   In that case, the Eleventh Circuit affirmed an order by the Federal Trade

17   Commission under Section 5 of the Federal Trade Commission Act, finding that Orkin had

18   engaged in unfair practices by unilaterally breaching over 200,000 contracts with its customers.

19   *Id*. at 1356.   As a result, Orkin was able to charge renewal fees of these customers, bringing in

20   $7,000,000 in revenues to which it was not entitled.  *Id*. at 364-365.  As a consumer unfairness

21   case (and a case that is factually distinguish from the allegations here, where a single contractual

22   relationship was allegedly breached), *Orkin* has no bearing on Plaintiff's UCL claim based on

23   alleged unfair practices.

### 3.  Remedy Requested

25          Plaintiff's UCL claim also fails to the extent that the only remedy Out Now seeks is an

26   award of damages for the business Out Now allegedly lost as a result of GTL's interruptions in

27   service.  The UCL does not provide for such a remedy.  Rather, the California Supreme Court has

28   held that under the UCL, "an individual may recover profits unfairly obtained [only] to the extent

United States District Court
Northern District of California

United States District Court
Northern District of California

1   that these profits represent monies given to the defendant or benefits in which the plaintiff has an

2   ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1148 (2003).

3   Here, Plaintiff does not allege that GTL received any money in which Out Now has an ownership

4   interest.  Therefore, Plaintiff's UCL claim fails on this ground as well.

5        Accordingly, the Court grants the Motion as to Claim Five, which is dismissed.

6        **G.        Intentional and Negligent Interference Claims**

7        Defendant contends Plaintiff's claims for negligent and intentional interference fail to state

8   a claim because Out Now fails to allege that GTL interfered with a specific relationship that

9   existed at the time of the alleged wrongful conduct.  The Court agrees.

10       To state a claim for intentional or negligent interference with prospective economic

11  advantage, a plaintiff must allege, *inter alia*, "an economic relationship between the plaintiff and

12  some third party, with the probability of future economic benefit to the plaintiff."  *Westside Center*

13  *Associates v. Safeway Stores*, *Inc.*, 42 Cal. App. 4th 507, 521-522 (1996) (citations and quotations

14  omitted) (intentional interference claim); *North American Chemical Co. v. Superior Court*, 59

15  Cal.App.4th 764, 786 (1997) (negligent interference claim).  California courts have made clear

16  that these claims cannot be based upon a mere "lost opportunity" or upon an "economic

17  relationship with the entire market of all possible but as yet unidentified" customers.  *Westside*

18  *Center Associates v. Safeway Stores*, *Inc.*, 42 Cal. App. 4th  at  523-528.   These torts protect  "the

19  expectation that the relationship eventually will yield the desired benefit, not necessarily the more

20  speculative expectation that a potentially beneficial relationship will eventually arise."  *Id.* at 524.

21       Out Now has alleged that GTL's unreliable service hurt its business, that is, that potential

22  clients turned to other bail bond agencies when they could not reach Out Now.  *See* FAC ¶ 55

23  (alleging, on information and belief, that because of the disruptions in telephone service Out Now

24  "did not receive all of the phone calls that inmates attempted to make to Out Now in order to

25  secure a bond"); *see also* FAC ¶¶ 104, 112 (alleging that it was harmed by alleged interference

26  because it disrupted "contract negotiations between Out Now and *potential* customers") (emphasis

27  added).  According to Out Now, these disruptions interfered with its prospective economic

28  advantage.  *Id.* ¶ 53.  These allegations amount to nothing more than a lost opportunity for future

29

1   business, which is insufficient to state a claim for intentional or negligent interference with

2   prospective economic advantage.[11]  Therefore, the Motion is granted as to Claims Six and Seven,

3   which are dismissed.

4         **H.     Negligence**

5         Defendant asserts Out Now's negligence claim fails to state a claim because it does not

6   owe a duty of care to Out Now.  The Court agrees.

7         To state a claim for negligence, a plaintiff must allege: (1) the defendant's legal duty of

8   care to the plaintiff; (2) breach of that duty; (3) causation; and (4) resulting injury to the plaintiff.

9   *Merrill v. Navegar, Inc.*, 26 Cal.4th 465, 500 (2001).  "The existence of a legal duty to use

10  reasonable care in a particular factual situation is a question of law for the court to decide."

11  *Vazquez v. Residential Invs., Inc.*, 118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004).

12  California courts consider the following factors in determining whether a defendant owes a duty of

13  care: "(1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff

14  suffered injury, (3) the closeness of the connection between the defendant's conduct and the injury

15  suffered, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing

16  future harm, (6) the extent of the burden to the defendant and consequences to the community of

17  imposing a duty to exercise care with resulting liability for breach, and (7) the availability, cost,

18  and prevalence of insurance for the risk involved."  *Taylor v. Elliott Turbomachinery Co., Inc.*,

19  171 Cal.App.4th 564, 593 (2009) (citing *Rowland v. Christian*, 69 Cal.2d 108, 113 (1968)).

20        Considering these factors, the Court finds that GTL did not owe a duty of care to Out Now.

21  Although it was likely foreseeable, in a general sense, that unreliable service would result in some

22  loss of business, the question of whether Out Now actually lost business is subject to speculation.

23  Out Now alleges that one or two inmates told them that they had been unable to reach Out Now

24  because the telephones were down, but those inmates ultimately got through to Out Now.  *See*

25

26  _____

[11] GTL also contends Plaintiff's interference claims fail because, to the extent Plaintiff's other
27  claims fail, Plaintiff has not alleged any conduct that is "independently wrongful."  Out Now does
    not dispute that it must establish that the conduct that is the basis for these claims must be
28  "independently wrongful," but contends it has met this requirement based on the other claims
    asserted in its FAC.  The Court need not reach this issue.

United States District Court
Northern District of California

1     FAC ¶ 62.  There is no way to know if other inmates tried and failed to reach Out Now during the

2     disruptions in service and if they did, whether those inmates were able to reach other bail bond

3     agencies or rather, ended up simply calling Out Now back when the service was working.

4     Further, although the intentional disruption of service alleged by Plaintiff may be morally

5     blameworthy, the unreliable service that is the main focus of the complaint is not. The Court also

6     finds that the extent of the burden on the defendant and likely consequences  to the community  of

7     imposing a duty point away from imposing such a duty.  Accordingly, the Court finds that

8     Defendant does not owe a duty of care to Out Now and that Plaintiff  therefore fails to state a

9     claim for negligence.  Defendant's Motion is granted as to Claim Eight, which is dismissed.

10           **I.**        **Federal Communications Act**

11           For the reasons stated above, in connection with Out Now's UCL claim, the Court

12     concludes that Plaintiff fails to state a claim under the FCA.  Therefore, the Motion is granted as

13     to Claim Nine, which is dismissed.

14           **J.**        **Whether Out Now Should be Permitted to Amend its Complaint**

15           Pursuant to Rule 15 (a)(2) of the Federal Rules of Civil Procedure, "[t]he court should

16     freely give leave [to amend] when justice so requires."   Under this Rule, a plaintiff should be

17     permitted to amend "[i]n the absence of any apparent or declared reason -- such as undue delay,

18     bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

19     amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

20     the amendment, [or] futility of amendment."  *Smith v. Pacific Properties and Development Corp*.,

21     358 F.3d 1097, 1101 (2004).  As there has been no bad faith or undue delay on Plaintiff's part, the

22     only question is whether amendment is futile.

23           As to Claims One and Three, alleging breach of an express contract based on: 1) the

24     Contract between GTL and the County; and 2) the Terms and Conditions sent to Out Now by

25     GTL, Plaintiff has failed to point to any legal authority or factual allegations that would save these

26     claims.   Similarly, Plaintiff made no meaningful attempt to address Defendant's challenge to its

27     FCA claim, either in its Opposition brief or at oral argument.  Therefore, the Court concludes that

28     amendment of these claims is futile and dismisses them without leave to amend.  As to the

United States District Court
Northern District of California

31

remaining claims, the Court concludes that Plaintiff may be able to allege additional facts to state viable claims and therefore permits Plaintiff to amend the complaint as to those claims.

**IV.    CONCLUSION**

For the reasons stated above, the Motion is GRANTED in part and DENIED in part. Plaintiff's amended complaint shall be filed  no later than August 31, 2013.

**IT IS SO ORDERED**.


Dated:  July 9, 2013


_____
JOSEPH C. SPERO
United States Magistrate Judge